**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ANTHONY PRATT, | Case No.  5:22-cv-04558-BLF |
| Plaintiff, | |
| v. | **ORDER DENYING SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |
| JAMES ROBERTSON, WARDEN, | [Re:  ECF No. 26] |
| Defendant. | |

Petitioner Anthony Pratt, a state prisoner represented by counsel, filed a second amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254(d) challenging his state criminal convictions for murder under California Penal Code § 187 and conspiracy under California Penal Code § 182.  ECF No. 26 ("Pet.").  Petitioner asserts four claims.  Respondent filed an answer and response addressing the merits of the four claims and exhibits in support thereof.  ECF No. 32 ("Ans.").  Petitioner filed a traverse.  ECF No. 33 ("Trav.").

Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief and DENIES the second amended petition.

## I.    BACKGROUND

In 2018, Petitioner was tried and convicted in San Francisco County Superior Court.  A jury found Petitioner guilty of one count of murder and one count of conspiracy to commit murder, and the trial court sentenced Petitioner to twenty-five years to life in state prison.

Petitioner appealed and, on February 22, 2021, the California Court of Appeal issued a written opinion affirming the judgment and denying a petition for writ of habeas corpus.  *See* Ans. Ex. 9 ("State Op.").  On May 12, 2021, the California Supreme Court denied petitions for review in both the direct review and habeas cases.  *See* Ans. Ex. 11.

*United States District Court*
*Northern District of California*

Petitioner initiated this case on August 8, 2022, asserting four exhausted claims and one unexhausted claim. ECF No. 1. On August 29, 2022, the Court granted Petitioner's request to dismiss his unexhausted fifth claim without prejudice and stay the matter so that he could return to state court to exhaust his fifth claim. ECF No. 6.

On July 15, 2024, Petitioner filed a motion notifying the Court that he had exhausted his fifth claim, asking that the stay be lifted, and asking that he be permitted to file an amended petition adding newly exhausted Claim Five. ECF No. 14. On August 1, 2024, the Court granted the motion. ECF No. 15. On October 31, 2024, Petitioner filed an amended petition raising the five claims he raised in his original petition. ECF No. 16.

On July 23, 2025, after the case was reassigned to the undersigned, the Court granted Respondent's motion to dismiss the fifth claim as untimely and set a briefing schedule for an answer and traverse. ECF No. 25. On August 7, 2025, Petitioner filed the second amended petition, asserting the four exhausted claims.

## II.    SUMMARY OF EVIDENCE AT TRIAL

In its written opinion, the California Court of Appeal fairly and accurately summarized the factual background of Petitioner's case at trial as follows:

> The convictions arise out of the homicide of Gary Elliott Smith on July 13, 2012, in San Francisco. Along with eyewitness testimony, the defendants' actions leading up to the shooting and the shooting itself were captured on multiple video surveillance cameras. Smith's girlfriend, K.H., witnessed the shooting and the earlier threat that led up to the shooting. Further, telephone records were also introduced showing communications between Pratt and an uncharged conspirator, S.W., before and after the shooting.
>
> On July 13, 2012, around 12:45 p.m., K.H. witnessed S.W. confront Gary Smith as he walked to a convenience store on Sixth Street in San Francisco near where K.H. lived. K.H. heard S.W. say that "[i]f Gary wouldn't give her the money for the dog or something . . . he would be tasting bullets."
>
> A compilation of the surveillance video from multiple locations on Sixth Street on the night of July 13, 2012, was shown to the jury and narrated by Sergeant Oscar Barcena. The video showed Pratt and Ballard walking down Sixth Street around 10:30 p.m. S.W.'s phone records show calls between S.W. and Pratt around 10:30 p.m. At 10:41 p.m., Pratt and Ballard went into a convenience store, and then they walked along Sixth Street. S.W. was with defendants on Sixth Street around 10:48 p.m. At 10:56 p.m., Ballard returned to the convenience store, adjusted something around his waistband, and left.
>
> At 11:05 p.m., S.W. walked by Smith and K.H., who were standing outside near K.H.'s apartment building. S.W. headed in the direction of

2

United States District Court
Northern District of California

Pratt's silver Pontiac parked on Mission Street. K.H. testified S.W. walked past the building "really fast." Phone records show that S.W. called Pratt at 11:06 p.m. and Pratt called her at 11:08 p.m.

At 11:09 p.m., the defendants walked along Sixth Street toward Smith. As they walked closer to Smith, Pratt, who is larger than Ballard, walked ahead, partially blocking Ballard. As Pratt passed Smith, Pratt looked directly at Smith and made a gesture toward him. Ballard immediately moved closer to Smith, pulled out a gun and fired three shots, hitting Smith at close range twice in the head and once in the hand. Smith died at the scene. K.H. was standing next to Smith when he was shot. She testified she saw the defendants and S.W. together by the convenience store just prior to the shooting.

After the shooting, the defendants ran around the corner onto Mission Street. They got into Pratt's silver Pontiac. N.M., a passerby who was looking for parking, noticed the Pontiac because initially its lights were on. N.M. parked in front of the Pontiac, and then he saw the Pontiac's lights turn off. After he parked, he heard three shots and saw two men come from around the corner, get into the Pontiac and drive away. G.W. was in the car with N.M. and also saw two men run and get into the Pontiac after gunshots were fired. G.W. called 911, and when the police arrived, G.W. gave them the Pontiac's license plate number.

The Pontiac was registered to Pratt. Cell phone tower records indicated that the cell phones owned by Pratt and S.W. traveled over the Bay Bridge after the shooting. Pratt called S.W. at 1:25 a.m. and 1:57 a.m. on July 14, 2012. At 2:31 a.m., S.W. texted Pratt, "I really love u," and Pratt texted back, "I love you too baby . . . ." Later that day, the police located the Pontiac at a residence in Union City. The police surveilled the residence, and when two men left in the Pontiac, the police followed them. When the police stopped the car, Pratt complied and was arrested. Ballard, who was the passenger, fled but was ultimately apprehended with the assistance of a police dog.

K.H. identified both defendants at trial. Additionally, Assistant Chief Toney Chaplin of the San Francisco Police Department, who was familiar with Ballard from prior contacts, identified him as the person in the surveillance footage who shot Smith. Pratt was shown the video during his police interview and admitted, "'That's me.'"

Neither defendant testified. Ballard's defense was misidentification. Pratt's defense was that he did not know about the shooting in advance and merely aided the shooter in escaping.

State Op. at 3–5 (footnotes omitted).

## III.   LEGAL STANDARD

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in State court unless the State court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

3

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant State court decision. *Id.* at 412.

Under AEDPA, the federal habeas court must accord a high level of deference to State court decisions. *See Harrington v. Richter*, 562 U.S. 86, 98–100 (2011). A federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409. In other words, the writ may be granted only "where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the United States Supreme Court's] precedents." *Harrington*, 562 U.S. at 100. Furthermore, if constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

IV.    **DISCUSSION**

A. **Claim One**

Petitioner sets forth his first claim as follows: "Petitioner was denied his federal

4

constitutional right to Due Process under the Fifth, Sixth, and Fourteenth Amendments where the evidence adduced at trial was insufficient to establish that Petitioner conspired to kill Smith." Pet. Ex. A ("Br.") at 14 (capitalization altered).

### 1. Court of Appeal Opinion

In his appeal before the Court of Appeal, Petitioner claimed that "the evidence produced at trial was insufficient to show an agreement to kill anyone" and that "[t]he inference that prior to the shooting itself there existed an agreement between S.W., appellant and Ballard to actually kill Smith requires speculation and conjecture." Ans. Ex. 6 ("State Br.") at 22. The court rejected this argument as follows:

> Pratt argues no substantial evidence demonstrates that the object of the conspiracy was murder, "as opposed to other forms of intimidation . . . ." Ballard joins in this argument. "'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Jurado* (2006) 38 Cal. 4th 72, 118.) "Evidence is sufficient to prove a conspiracy to commit a crime 'if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. [Citation.] The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy. [Citations.]'" (*People v. Rodrigues* (1994) 8 Cal. 4th 1060, 1135.)
>
> "'A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act "by one or more of the parties to such agreement" in furtherance of the conspiracy.'" (*People v Jurado*, *supra*, 38 Cal. 4th at p. 120.) "[C]onspiracy may be proved through circumstantial evidence inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy." (*People v. Prevost* (1998) 60 Cal. App. 4th 1382, 1399, *disapproved on other grounds in People v. Dalton* (2019) 7 Cal. 5th 166, 243.)
>
> According to Pratt, the surveillance video evidence showed only his association with Ballard on Sixth Street, which is not sufficient to infer a criminal conspiracy to commit murder. Further, Pratt argues the phone records establish an association between himself and S.W. but are not evidence of conspiracy to commit murder with Ballard. Pratt relies on K.H.'s testimony that Pratt "'didn't say nothing to me'" and "'didn't do nothing in support of his argument that there was no evidence of his direct participation in the crime, and he asserts there is insufficient evidence of motive.
>
> The flaw in Pratt's argument is that he focuses on each piece of evidence in isolation. This is not a case where the evidence shows only "mere association and suspicion of criminal conduct" insufficient to establish conspiracy. (*People v. Tran* (2013) 215 Cal. App. 4th 1207, 1221.) Pratt's communications and association with S.W., and his conduct with Ballard

before, during, and after the murder, support the jury's findings. (*See People v. Jurado*, *supra*, 38 Cal. 4th at p. 121 ["Although there is no direct evidence that defendant and [an accomplice] discussed in advance the killing of [the victim], there was evidence that they were alone together . . . shortly before the killing, during which a discussion and agreement could have taken place"].)  Earlier in the day, S.W. told the victim he would be "tasting bullets." Just before the shooting, she walked by the victim toward Pratt's car.  Phone records showed calls between S.W. and Pratt at 11:06 p.m. and 11:08 p.m., minutes before the shooting.  The jury could reasonably infer the conversation related to the shooting because S.W. had been on the street with Ballard and Pratt that night; she walked by the victim moments before the calls, in the direction of Pratt's car; and immediately after the shooting, Pratt and Ballard left the scene in Pratt's car.  Further, phone records indicated S.W. left with them. (*See People v. Maciel* (2013) 57 Cal. 4th 482, 518–519 ["Calls to defendant's pager by [other participants in the murder] before and after the murders also demonstrated defendant's knowledge of the plan and his assistance in its accomplishment"].)

The manner of the shooting suggests it was planned in advance and belies Pratt's argument that the object of the conspiracy might have been some "other form[] of intimidation . . . ."  Ballard walked down the street behind Pratt, and then when the two reached Smith, Ballard immediately pulled out his gun and shot Smith three times, twice in the head and once in the hand. (*See People v. Tran* (1996) 47 Cal. App. 4th 759, 773 [argument that conspiracy might have been "to commit only a nonfatal assault [wa]s undermined by the fact that [the victim] was shot in the head"].)  Pratt argues that the surveillance video shows he raises his arms and is "shocked by the gunshot" and that this reaction does not support a finding that he planned the shooting.  But, as the prosecutor argued to the jury, Pratt's physical movements at the moment shots are fired within a foot of his ear could be reasonably interpreted as either part of his effort to quickly flee the scene or an involuntary physical reaction to loud gunshots right behind him.

Further, Pratt's reliance on K.H.'s testimony that Pratt "'didn't say nothing to me" and "'didn't do nothing'" ignores the evidence on the surveillance video.  Pratt was in front of Ballard as they walked by Smith, partially blocking Ballard from Smith's view.  Immediately before the shooting, Pratt catches Smith's attention with a gesture or a nod.  From this evidence and Pratt's fleeing the scene in his car with Ballard immediately after the shooting, the jury could have reasonably inferred that Pratt actively assisted Ballard in the shooting.

When taken as a whole, the evidence presented to the jury is sufficient to support a conspiracy to commit murder, the existence of which "'may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy.'" (*People v. Rodrigues*, *supra*, 8 Cal. 4th at p. 1135.)

State Op. at 5–8 (alterations in original).

### 2. Federal Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a

6

rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim.

Evidence is constitutionally sufficient to support a conviction when, upon "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt. *Jackson*, 443 U.S. at 326. Rather, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir. 1995).

A federal court collaterally reviewing a state court conviction must presume that the trier of fact resolved any conflicts in the evidence in favor of the prosecution and must defer to that resolution. *Jackson*, 443 U.S. at 326; *McDaniel v. Brown*, 558 U.S. 120, 133 (2010). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A jury's credibility determinations are therefore entitled to near-total deference under *Jackson*." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Thus, the habeas court must "look to [state] law only to establish the elements of [the crime] and then turn to the federal question of whether the [state] court was objectively unreasonable in concluding that sufficient evidence supported [its decision]." *Johnson v. Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018) (alterations in original). After AEDPA, a federal habeas court applies the *Jackson* standard with an additional layer of deference. *See Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Coleman*, 566 U.S. at 651. To grant relief, therefore, a federal habeas court must conclude that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively

7

unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 964–65 (9th Cir. 2011).

### 3. Analysis

Petitioner now asks the Court to grant him relief from the Court of Appeal's decision, acknowledging that the court "identified the correct, governing legal rule" but nonetheless arguing that it "unreasonably applied [the legal standard] to the facts." Br. at 14. Having reviewed the Parties' submissions as well as the evidence in the record, the Court concludes that the Court of Appeal's rejection of Petitioner's claim did not involve an unreasonable application of the *Jackson* sufficiency standard to the facts of the case.

Petitioner's argument at bottom amounts to a request that the Court re-weigh the evidence that the jury was entitled to consider and from which it could reasonably conclude that he was guilty of the conspiracy as charged. *Cf. Cavazos*, 565 U.S. at 2 ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). He urges that (1) the prosecution "failed to demonstrate that [he] conspired with anyone," (2) the prosecution "failed to prove what the object of the conspiracy was," and (3) evidence of his cell phone records "was of no weight" since it could be explained by his relationship with S.W. Br. at 21–22. In doing so, Petitioner himself misapplies the *Jackson* standard: Rather than taking the evidence as a whole and in the light most favorable to the jury's verdict, he selectively picks facts, considers them in isolation, and then urges that the Court adopt all inferences in his favor.

The Court of Appeal properly found that the evidence of Petitioner's association with S.W. and his conduct with Ballard before, during, and after the murder supported an inference that the three conspired to murder Smith. The evidence, which showed that White was angry with Smith for failing to pay a debt and confronted him shortly before the killing, and that Petitioner walked in front of Ballard and gestured toward Smith right before Ballard shot was plainly sufficient under the highly deferential standard provided by AEDPA. Because he falls far short of demonstrating that the Court of Appeal "erred so transparently that no fairminded jurist could agree with that court's decision," *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (per curiam), he is not entitled to relief on his first ground.

### B. Claim Two

Petitioner sets forth his second claim as follows: "Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the trial court failed to instruct the jury on the lesser included offenses of conspiracy to commit assault and conspiracy to commit assault with the use of a firearm." Br. at 22 (capitalization altered).

### 1. Court of Appeal Opinion

In his appeal before the Court of Appeal, Petitioner claimed "instructional error limiting jurors to a conspiracy-to-kill or nothing-at-all," arguing that "[i]f a conspiracy there was, it was not necessarily one to commit murder[] [because] [t]he presence of a debt, and argument over it, will often lead to discord, including threats in an attempt to collect." State Br. at 35. The court rejected this argument as follows:

> Pratt argues the trial court erred in failing to instruct sua sponte on conspiracy to commit assault and conspiracy to commit assault with a firearm, which he contends are lesser included offenses of conspiracy to commit murder. Ballard joins in this argument. According to the defendants, the overt acts alleged in the conspiracy to commit murder count, which include that Ballard brought a loaded firearm to Sixth Street and that he shot Smith, warranted an instruction on conspiracy to commit assault and conspiracy to commit assault with a firearm.
>
> There are two tests to determine if an uncharged offense is included in a charged offense. (*People v. Parson* (2008) 44 Cal. 4th 332, 349.) "Under the elements test, a court determines whether, as a matter of law, the statutory definition of the greater offense necessarily includes the lesser offense." (*Ibid.*) The defendants concede that under the elements test, neither conspiracy to commit assault nor conspiracy to commit assault with a firearm is a lesser included offense of conspiracy to commit murder. The second test is the accusatory pleading test under which "a court reviews the accusatory pleading to determine whether the facts actually alleged include all of the elements of the uncharged lesser offense; if it does, then the latter is necessarily included in the former." (*Ibid.*)
>
> The parties acknowledge a split in authority regarding the accusatory pleading test in conspiracy cases. *People v. Fenenbock* (1996) 46 Cal. App. 4th 1688 held that because the essence of conspiracy is the coconspirators' agreement itself, and because overt acts need not be committed by the defendants and need not even be criminal, such acts "do not necessarily reveal the criminal objective of the conspiracy" and therefore do not provide notice of any allegedly lesser "target" offenses. (*Id.* at p. 1709.) "[I]t is the description of the agreement within the accusatory pleading, not the description of the overt acts, which must be examined to determine whether a lesser offense was necessarily the target of the conspiracy." (*Ibid.*) Because the conspiracy charge in Fenenbock alleged only that the defendants "conspired to murder [the victim]," it did not necessarily include assault battery, or mayhem as lesser target offenses of the conspiracy, and therefore the trial court did not err in failing to give instructions of conspiracy to commit lesser target offenses. (*Ibid.*)
>
> *People v. Cook* (2001) 91 Cal. App. 4th 910, 920–921, disagreed with *Fenenbock* and held that a court may consider the overt acts alleged in

9

determining whether a conspiracy charge necessarily includes any lesser target offenses. The charging document in *Cook* alleged only conspiracy to commit murder, but the court found it gave notice of conspiracy to commit assault with a firearm because two of the alleged overt acts involved use of a firearm. (*Id.* at pp. 921–922.) Therefore, *Cook* found the trial court properly instructed on the lesser conspiracy offense. (*Id.* at p. 920.)

More recently, *People v. Cortez* (2018) 24 Cal. App. 5th 807 rejected much of the reasoning of *Cook*. Cortez agreed that overt act allegations may be considered in determining lesser included offenses because "there may be overt act allegations establishing that the defendant has agreed or conspired to commit lesser included target offenses." (*Id.* at p. 820.) However, an instruction on a lesser included offense is not required where "the accusatory pleading did not allege that the defendants agreed to commit any crime, other than murder." (*Ibid.*) *Cortez* found that although the alleged overt acts could support offenses of assault with a firearm and shooting at an inhabited dwelling, instruction on conspiracy to commit those offenses was not required "because there [we]re no allegations of the requisite element of defendant agreeing or conspiring to commit those target offenses." (*Id.* at p. 821.)

Here, under the reasoning of *Fenenbock* and *Cortez*, there was no duty to instruct on conspiracy to commit lesser offenses because the information alleged the defendants conspired to commit murder and it did not describe an agreement to commit any lesser offenses.

Even assuming *Cook* is applicable and the accusatory pleading test is met because two of the overt acts involve use of a firearm, we conclude the trial court did not err in refusing to instruct the jury on conspiracy to commit lesser offenses. A "trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed." (*People v. Birks* (1998) 19 Cal. 4th 108, 112.) We find no substantial evidence that only conspiracy to commit assault or conspiracy to commit assault with a firearm was committed. As discussed above, there was substantial evidence of conspiracy to commit murder.

Pratt argues the evidence, including the surveillance video, is not inconsistent with "something less than homicidal intent" and that text messages sent from S.W. to Pratt 15 minutes before the murder indicate "something less than homicidal intent." Phone records admitted into evidence showed that at 10:54 p.m. S.W. texted Pratt, "Tell him beat that nigga ass." (Sic.) Two minutes later, S.W. texted Pratt, "No." There was no testimony at trial regarding the meaning of these messages, and speculation does not trigger a court's sua sponte duty to provide instructions on uncharged offenses. (*People v. Mendoza* (2000) 24 Cal. 4th 130, 174 ["Speculation is insufficient to require the giving of an instruction on a lesser included offense. [Citations.]"].)

Further, even if we were to find the unexplained text messages constituted sufficient evidence to require the giving of an instruction on lesser included offenses of conspiracy to commit assault or conspiracy to commit assault with a firearm, we would conclude any possible error was harmless. "Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions." (*People v. Lewis* (2001) 25 Cal. 4th 610, 646.) Here, the defendants were convicted of first degree murder. By convicting Ballard of first degree murder, the jury found that he intended to kill Smith and did so either by lying in wait or willfully, deliberately and with premeditation. By convicting Pratt of first degree murder, the jury found that Pratt knew Ballard intended to kill

Smith and that Pratt intended to aid Ballard in killing Smith. Thus, the jury necessarily found that both Pratt and Ballard had the specific intent to kill required for conspiracy to commit murder.

State Op. at 11–15 (alterations in original) (footnotes omitted).

### 2. Federal Law

There is no clearly established Supreme Court authority requiring a lesser included offense instruction in non-capital cases. While the Supreme Court has held that a criminal defendant may be entitled to such an instruction in capital cases, it has declined to extend this holding to non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980); *see also Keeble v. United States*, 412 U.S. 205, 213 (1973) ("[W]e have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense . . . ."). The Ninth Circuit has accordingly explained that "the failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (alteration in original) (quoting *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984)).

A claim of state instructional error can be the basis of federal habeas relief only if the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *see also Menendez v Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). "Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury." *Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995). That said, a habeas petitioner whose claim involves the failure of a state court to give a particular instruction, as opposed to a claim that the court gave an incorrect instruction, bears an "especially heavy burden." *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155). And "a state trial court's finding that the evidence does not support a claim of imperfect self-defense is entitled to a presumption of correctness." *Menendez*, 422 F.3d at 1029.

### 3. Analysis

Petitioner now asks the Court to grant him relief from the Court of Appeal's decision,

urging that the court unreasonably applied the law to the facts of the case and that the last reasoned state decision is not entitled to the presumption of correctness. Br. at 23. Having reviewed the Parties' submissions as well as the evidence in the record, the Court concludes that the Court of Appeal's rejection of Petitioner's claim did not involve an unreasonable application of law to the facts of the case.

As a threshold matter, Petitioner appears to acknowledge that the Ninth Circuit has held that the failure to instruct on a lesser offense in a non-capital case does not raise a federal constitutional question but invites the Court to disregard this holding and apply the law of a different regional circuit. *See* Br. at 24 ("The Third and Sixth Circuits' approach is the more reasonable approach, especially in cases such as Petitioner's where the state court came to an unreasonable determination in light of the facts and the error had a substantial and injurious effect on Petitioner's trial."). This the Court declines to do. Only the holdings of the Supreme Court constitute clearly established law for purposes of AEDPA, and the lower courts cannot extend the *Beck* rule to noncapital cases to create clearly established law for purposes of federal habeas review. *See Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA.").

To the extent that Petitioner argues that the trial court's failure to adopt his instruction rose to the level of constitutional error, the Court disagrees. The Court of Appeal reasonably found that there was insufficient evidence to warrant an instruction under state law, and, contrary to Petitioner's suggestion otherwise, he has not provided any reason to depart from the presumption of correctness under 28 U.S.C. § 2254(e)(1); *see also Menendez*, 422 F.3d at 1029. In any case, he has also failed to demonstrate that any error had a "substantial and injurious effect or influence in determining the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 145 (1998) (per curiam) (quoting *Brecht*, 507 U.S. at 637). As the Court of Appeal noted, by finding him guilty of murder, the jury found that he knew Ballard intended to kill the victim and that he intended to aid Ballard in killing the victim. Thus, the jury necessarily found that he had the specific intent to kill required for conspiracy to commit murder. Petitioner thus cannot show that the failure to instruct

12

on conspiracy to commit assault and conspiracy to commit assault with a firearm resulted in actual prejudice, and he is not entitled to relief on the second ground.

### C. Claim Three

Petitioner sets forth his third claim as follows: "Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the trial court failed to instruct the jury on the use of [S.W.'s] statement as a co-conspirator to incriminate Petitioner." Br. at 27 (capitalization altered).

#### 1. Court of Appeal Opinion

In his appeal before the Court of Appeal, Petitioner argued that the trial court erred by permitting K.H. to testify that "[S.W.] threatened Smith with 'eating bullets' without also instructing the jury regarding the requisite foundational facts they must decide before considering the co-conspirator statement at appellant's murder and conspiracy trial." State Br. at 46. The court rejected this argument as follows:

> The defendants argue that because S.W.'s threat that Smith would be "tasting bullets" was only relevant as a statement by a coconspirator (Evid. Code, § 1223), the trial court was required to instruct the jury sua sponte with CALCRIM No. 418.
>
> During pretrial motions, the People argued the statement was admissible through K.H.'s testimony as a statement of a coconspirator (Evid. Code, § 1223), as a declaration against penal interest (Evid. Code, § 1230), under the state of mind hearsay exception (Evid. Code, § 1250), and as a nonhearsay verbal act. The trial court ruled that the People could refer to S.W.'s statement in its opening statement, stating, "[T]he bases are indicated by your non-hearsay declaration as to state of mind and a statement of coconspirator." Before K.H. testified, the defendants renewed their objections to S.W.'s statement coming in through K.H. and the trial court permitted the testimony.
>
> On appeal, the People concede the statement was not properly admitted under the coconspirator exception because the statement was made before the conspiracy started. Instead, they argue the statement was properly admitted as a nonhearsay declaration of a state of mind. We find the statement was properly admitted under the state of mind exception.
>
> Evidence Code section 1250 provides an exception to the hearsay rule for "evidence of a . . . declarant's then existing state of mind . . . (including a statement of intent, plan, motive . . . ) . . . when: [¶] (1) The evidence is offered to prove the declarant's state of mind . . . at that time or at any other time when it is itself an issue in the action." S.W.'s state of mind on the day of the murder was relevant because she was an associate of Pratt's and she was seen with Pratt and Ballard the night of the murder. Phone records show text messages and phone calls between her and Pratt around the time of the murder and the next day. Evidence that S.W. threatened Smith hours before the shooting was relevant to the defendants' motive, plan, intent, premeditation, and deliberation and to the existence of the conspiracy. (*See*

13

*People v. Han* (2000) 78 Cal. App. 4th 797, 805 [out of court statements made before conspiracy was formed "were clearly admissible against all defendants per Evidence Code section 1250"]; *People v. Sanders* (1995) 11 Cal. 4th 475, 518 [preconspiracy statement admissible to establish declarant's state of mind, "i.e., her intention to form a conspiracy . . . , which was clearly relevant to the issue of whether she subsequently entered into a conspiracy with defendant to commit robbery"].)

S.W.'s statement was properly admitted under the state of mind exception, and therefore it was not necessary for the jury to determine foundational facts to support the coconspirator exception. (*People v. Zapien* (1993) 4 Cal. 4th 929, 976 ["'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion'"].)

State Op. at 16–19 (alterations in original) (footnotes omitted).

### 2. Federal Law

As explained above, a claim of state instructional error can be the basis of federal habeas relief only if the error "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (1991) (quoting *Henderson*, 431 U.S. at 154).

### 3. Analysis

Petitioner now asks the Court to grant him relief from the Court of Appeal's decision, urging that the court unreasonably applied the law to the facts of the case and that the last reasoned state decision is not entitled to the presumption of correctness. Br. at 28. Having reviewed the Parties' submissions as well as the evidence in the record, the Court concludes that the Court of Appeal's rejection of Petitioner's claim was not objectively unreasonable.

Petitioner argues that the state court erred by not providing a sua sponte instruction as to use of S.W.'s threats against Smith as a coconspirator statement pursuant to CALCRIM No. 418, though this instruction is required to be issued sue sponte. He argues that "[t]his error was extremely prejudicial since it permitted the jury to take [S.W.'s] statement at face value without any of the required caution with which it is required to consider in weighing her statement as a coconspirator." Br. at 30. The court rejected the foundational premise of Petitioner's instructional error claim (i.e., that S.W.'s statement was hearsay) because it found the statement admissible pursuant to the state-of-mind exception, and that therefore the instruction on coconspirator

statements was not warranted. Its interpretation and application of state law in this regard cannot be revisited on federal habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Any purported failure to instruct on coconspirator statements was accordingly not prejudicial, *see Brecht*, 507 U.S. at 637, and Petitioner is accordingly not entitled to relief on his third ground.

### D. Claim Four

Petitioner sets forth his fourth claim as follows: "Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the trial court erred in excluding evidence regarding the full context of White's statement." Br. at 31 (capitalization altered).

#### 1. Court of Appeal Opinion

In his appeal before the Court of Appeal, Petitioner argued that "[i]f the evidence of 'tasting bullets' was relevant as to motive, then the full context of the argument should have been introduced" and that the court erred by "restrict[ing]" "cross-examination . . . regarding the dog dispute" and "exclud[ing]" "context evidence." State Br. at 63. The court rejected this argument as follows:

The defendants argue the trial court erred by limiting their cross-examination of K.H. regarding the context of S.W.'s statement concerning the "dog-debt." K.H. testified that she heard S.W. tell Smith that "[i]f Gary [Smith] wouldn't give her the money for the dog or something . . . he would be tasting bullets." The prosecutor then asked what Smith did in response, and K.H. stated, "Gary [Smith]—Gary was like, What? What? And then I got in between them, and I was just—she was explaining to me what happened about the dog because I never knew about the dog." The prosecutor then stated she did not want to ask about what other people said, other than with respect to the specific threats. K.H. again testified that S.W. told Smith "[t]hat he would be tasting bullets if he—if she—if he didn't give her the money for the—the dog." The prosecutor did not elicit any further testimony from K.H. regarding S.W.'s statements.

On cross-examination, Pratt's counsel asked K.H., "So this person [S.W.] wanted money for the dog, correct?" K.H. responded, "Correct." Pratt's counsel later asked, "And the reason she wanted money was not for herself, but for somebody else?" K.H. responded, "Correct," and Pratt's counsel began to inquire further about "that person" before the prosecutor objected on the grounds of relevance, hearsay, and Evidence Code section 352 and moved to strike K.H.'s answer. The trial court sustained the objection and struck K.H.'s prior answer. Pratt's counsel then asked K.H. if she had any personal knowledge about the dog, and she confirmed she did not because the dog was "before [her] time," which she later clarified meant before her time with Smith. Pratt's counsel later began to inquire about

15

"[Smith's] part of the argument is he was claiming that her boyfriend had given—" The prosecutor again objected based on hearsay and Evidence Code section 352, and Pratt's counsel responded that the entirety of the conversation should be admitted under the rule of completeness. The trial court disagreed and sustained the prosecutor's objections. Outside the presence of the jury, Pratt's counsel argued Evidence Code section 356 permitted him to question K.H. about the details of the conversation that included the "tasting bullets" threat. He explained that he wanted to ask three questions regarding S.W.'s claim that Smith owed S.W.'s ex-boyfriend (who was now incarcerated) money for a dog he gave to Smith and that Smith claimed the dog was a gift. The trial court ruled the questions were not relevant and not admissible under Evidence Code section 352.

We review the trial court's evidentiary rulings under the abuse of discretion standard, and the ruling "will '"not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Nguyen* (2010) 184 Cal. App. 4th 1096, 1116.) We find no abuse of discretion. First, K.H. testified that she knew little about the dog issue because it was before she became involved with Smith. Second, any information she had was based on hearsay, and possibly even hearsay within hearsay. Third, any further information regarding the "dog-debt" was not relevant to the issues in the trial. K.H. witnessed an argument between Smith and S.W. during which S.W. was angry because Smith "wouldn't give [S.W.] the money for the dog or something" and she threatened Smith. The details about an imprisoned third party's possible connection to the alleged "dog-debt" had no bearing on the defendants' guilt or innocence.

Pratt argues the evidence was necessary to make it "clear that he was not the amorous interest to whom the dog-debt was owed," but K.H. never testified that the money for the dog was owed to Pratt or to any boyfriend of S.W.'s. Although Pratt's counsel solicited testimony from K.H. that S.W. wanted money "for somebody else," the prosecutor objected to this testimony and it was stricken.

The purpose of section 356 is " "to prevent the use of selected aspects of a conversation . . . so as to create a misleading impression on the subjects addressed.""" (*People v. Hardy* (2018) 5 Cal. 5th 56, 104). Here, K.H.'s testimony regarding the threat did not leave the jury with any misleading impression regarding the dog debt, and additional testimony was not necessary to understand the threat made by S.W. The only relevant issue was whether S.W. made a statement that Smith would be "tasting bullets." The trial court did not abuse its discretion by excluding hearsay testimony on a matter about which K.H. had no direct knowledge. (*See People v. Riccardi* (2012) 54 Cal. 4th 758, 803 [under Evid. Code, § 356 entirety of conversation is admissible "if necessary to the understanding of the otherwise admissible portions"], overruled on other grounds in *People v. Rangel* (2016) 62 Cal. 4th 1192, 1216.)

The defendants also argue the exclusion of evidence violated their constitutional rights to confront witnesses, to present evidence on their behalf, and to a fair trial. (U.S. Const., 5th, 6th & 14th Amends.; Cal. Const., art. I, §§ 7 & 15.) ""As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense." (*People v. Cudjo* (1993) 6 Cal. 4th 585, 611.) Here, the trial court did not err in excluding hearsay testimony and there was no constitutional violation.

Even if we were to assume the trial court erred, we would find any error harmless. At most, the testimony sought by the defendants might have revealed that it was S.W.'s incarcerated ex-boyfriend, rather than S.W.

16

herself, who was owed money for the dog.  Such evidence would not undercut K.H.'s testimony about S.W.'s threat, her eyewitness testimony regarding the shooting, her in court identification of the defendants, the surveillance video, and the phone records showing coordination between S.W. and Pratt before and after the murder.  We find that even if there was error, it is not reasonably probable that a result more favorable to the defendants would have been reached in the absence of any assumed error.  (*See People v. Cunningham* (2001) 25 Cal. 4th 926, 999 ["the exclusion of defense evidence on a minor or subsidiary point does not interfere with [a] constitutional right [Citation.] Accordingly such a ruling, if erroneous, is 'an error of law merely,' which is governed by the standard of review announced in *People v. Watson* (1956) 46 Cal. 2d 818, 836"].)

State Op. at 19–23 (alterations in original) (footnotes omitted).

### 2.  Federal Law

The Constitution through the Sixth Amendment secures to all criminal defendants the right to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  However, a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions" as set forth in the state's evidentiary rules).

The Supreme Court has not clearly established that a constitutional violation arises when a state trial court exercises discretion to exclude defense evidence under a valid state evidentiary rule. *Sherman v. Gittere*, 92 F.4th 868, 880 (9th Cir. 2024); *Moses v. Payne*, 555 F.3d 742, 758–79 (9th Cir. 2009).  The Supreme Court has addressed only challenges to state evidentiary rules that by their own terms impinge upon the right to present a defense. *Id.* at 758–79; *see also Brown v. Horell*, 644 F.3d 969, 983 (9th Cir. 2011).  Thus, a state court's discretionary ruling pursuant to a well-established rule of evidence "cannot be contrary to or an unreasonable application of clearly established Supreme Court precedent." *Moses*, 555 F.3d at 759.

### 3.  Analysis

Petitioner now asks the Court to grant him relief from the Court of Appeal's decision, urging that the court unreasonably applied the law to the facts of the case and that the last reasoned state decision is not entitled to the presumption of correctness.  Br. at 31.  Having reviewed the Parties' submissions as well as the evidence in the record, the Court concludes that the Court of

17

United States District Court
Northern District of California

Appeal's rejection of Petitioner's claim was not objectively unreasonable.

Petitioner argues that he was deprived of his constitutional right to present a defense because he was prohibited from cross-examining the witness as to S.W.'s alleged threat, since "his proposed cross-examination would have undermined [the witness's] credibility" and "demonstrated that Petitioner proverbially had no dog in the fight." Br. at 35–36. To the extent that Petitioner challenges the state courts' determination that his proffered evidence was inadmissible under state rules of evidence, this determination may not be revisited on federal habeas review. *Bradshaw*, 546 U.S. at 76. Petitioner's proverbial-dog-fight argument does not meet the *Brecht* standard for actual prejudice, and he is not entitled to relief under the fourth ground.

## V.   CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be DENIED. Further, a Certificate of Appealability is DENIED. *See* Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated:  March 30, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

18